**FILED**
**Sep 07, 2021**
**11:33 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **ANTWAN TAYLOR,** | ) | **Docket No 2020-06-1736** |
| **Employee,** | ) | |
| **v.** | ) | |
| **A1 FUN CYCLES** | ) | **State File No. 70251-2020** |
| **Employer,** | ) | |
| **And** | ) | |
| **WEST BEND MUT. INS. CO.,** | ) | **Judge Robert Durham** |
| **Carrier,** | ) | |
| **And** | ) | |
| **ABIGAIL HUDGENS,** | ) | |
| **Administrator,** | ) | |
| **Subsequent Injury Fund.** | ) | |

---

## EXPEDITED HEARING ORDER

---

This case came before the Court on August 26, 2021, for an Expedited Hearing. Mr. Taylor sought another doctor to treat shoulder and clavicle symptoms he alleged stemmed from his work accident, as well as additional temporary disability benefits. A1 Fun Cycles contended that the authorized physician rescinded his recommendation for further treatment based on the refusal of multiple specialists to treat him. The Court holds that Mr. Taylor did not show he is likely to prove entitlement to additional treatment from another specialist for his chest and shoulder complaints, but he is entitled to additional temporary disability benefits.

### History of Claim

*Medical Treatment*

On November 6, 2020, Mr. Taylor allegedly suffered injuries to his left shoulder and clavicle after tires blew out on his delivery truck, causing the truck to strike a guardrail. He received emergency treatment, including CT scans of his head, chest, and neck. The scans did not reveal any acute injury. The emergency provider gave Mr.

1

Taylor a sling for his left arm and prescribed pain medication.

Mr. Taylor continued to experience pain around his left clavicle. At a November 23 emergency room visit, he complained of severe pain as well as the sensation that the clavicle was "popping out" when he moved his shoulder. The provider recommended he see a specialist for his continued symptoms.

A1 Fun Cycles then authorized Mr. Taylor to treat with orthopedist Dr. Stephen Rose without providing a panel. Dr. Rose obtained left shoulder x-rays that did not reveal any abnormalities. He restricted Mr. Taylor to no use of his left arm and ordered physical therapy. He later ordered a left-shoulder MRI and again restricted Mr. Taylor to one-armed work. Although physical therapy somewhat improved Mr. Taylor's symptoms, he still complained of significant clavicle pain. Given that Dr. Rose could not find anything wrong with Mr. Taylor's shoulder, he referred him to a spine specialist to determine if his complaints were due to cervical nerve root impingement.[1] Dr. Rose issued a Form C-30A Final Medical Report on December 28, stating that Mr. Taylor had reached maximum medical impairment with a 0% impairment and no anticipated need for further treatment.

After Dr. Rose's referral, A1 Fun Cycles provided Mr. Taylor a panel, and he chose Dr. Daniel Burval. On his initial examination, Dr. Burval noted that Mr. Taylor complained of such severe left-shoulder pain that he could barely lift his arm, and he exhibited no range of motion to the left side of his neck due to neck pain. Dr. Burval did not believe the pain was due to radiculopathy; nevertheless, he ordered a cervical MRI to see if any impingement was present. He also restricted Mr. Taylor's activities to no driving or overhead work, and no lifting more than ten pounds.

When Dr. Burval saw Mr. Taylor again on December 30, he noted that the MRI did not reveal any abnormalities consistent with Mr. Taylor's subjective complaints, and he did not have any treatment options. However, he recommended that Mr. Taylor see Dr. Jason Evans to determine if trauma to the sternoclavicular joint had caused soft tissue separation. He also kept Mr. Taylor off work until Dr. Evans evaluated him because he suspected "sternoclavicular pathology." Dr. Burval issued a Form C-30A on December 30, stating that Mr. Taylor was at maximum medical improvement for the spine only with a 0% impairment, but noting that he might need treatment with Dr. Evans.

Upon receiving Dr. Burval's referral, Dr. Evans refused to treat Mr. Taylor. Dr. Burval made another referral to Dr. Phillip Kregor, who also refused to treat Mr. Taylor.[2] A1 Fun Cycles then attempted to schedule Mr. Taylor to see Dr. John Kuhn, an

---

[1] The parties only made Dr. Rose's Worklink Physician reports an exhibit. The Court gleaned much of this information from Dr. Burval's records.
[2] The parties did not provide any communications from Dr. Evans or Dr. Kregor as to why they declined to treat Mr. Taylor.

orthopedic trauma specialist. Dr. Kuhn asked for Mr. Taylor's medical records and then sent the following email on January 25, 2021: "All of his imaging in normal. There is nothing I can do to help him. Please do not make any appt to see me."

In the meantime, Mr. Taylor visited his family physician with left clavicle symptoms, and on February 24, went to the emergency room. X-rays were normal and the provider did not find a clear dislocation. However, he did note "laxity" in the left sternoclavicular joint and "subluxation" of the clavicle with movement. He provided a sling and recommended follow-up with an orthopedist.

A1 Fun Cycles eventually sent a questionnaire to Dr. Burval asking whether additional treatment was necessary given Dr. Kuhn's refusal to see Mr. Taylor. Dr. Burval responded on June 18. He noted that Dr. Kuhn is "chief of shoulder surgery," and Dr. Evans and Dr. Kregor are orthopedic trauma specialists. He then explained that he did not believe additional treatment would benefit Mr. Taylor, since these specialists all refused to see him because they did not feel further treatment would help.

*Employment History*

A1 Fun Cycles asserted that Mr. Taylor is not entitled to additional temporary disability benefits because Dr. Burval rescinded his referral. It also contended it terminated Mr. Taylor for cause before the referral, therefore eliminating its obligation to provide temporary disability benefits after the termination. So, much of the hearing testimony concerned Mr. Taylor's employment, which the Court summarizes below.

Mr. Taylor began working for A1 Fun Cycles, and its owner, Thompson Ward, in the summer of 2020. Mr. Taylor described their relationship as "rocky," and Mr. Ward agreed that it was often contentious. Mr. Ward fired Mr. Taylor after an altercation in September but rehired him several days later.

The parties' testimony differed significantly as to Mr. Taylor's duties after his accident. Mr. Taylor said that the job frequently required him to use his left arm in violation of his restrictions. Mr. Ward said that if Mr. Taylor felt that a particular job duty would cause too much discomfort, he was free to do something else, even if it only involved talking with customers. Mr. Taylor countered that he was in so much pain, even talking with customers was beyond him.

In any event, both agreed that Mr. Taylor only worked a few hours at a time for two to four days from November 7 until his termination on December 26 for job abandonment. Mr. Taylor testified that after losing his job, he did not work anywhere until he started his own cleaning business on July 20, 2021.[3]

_____

[3] Mr. Taylor stated that he was only seeking temporary total disability benefits from December 8, 2020,

3

**Findings of Fact and Conclusions of Law**

Mr. Taylor has the burden of showing he would likely prevail at trial on his requests for medical treatment with another authorized physician and additional temporary disability benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2020); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). The Court will address each issue in turn.

Tennessee Code Annotated section 50-6-204 governs an employer's obligation to provide medical treatment made "reasonably necessary" by a work injury. A1 Fun Cycles agreed that Mr. Taylor suffered a work accident and is entitled to reasonable and necessary medical treatment for injuries from that accident. Indeed, A1 Fun Cycles confirmed that Drs. Rose and Burval remain authorized treating physicians. The question is whether Mr. Taylor is likely to prove that another authorized provider to treat his sterno-clavicular symptoms is reasonable and necessary. Given the evidence, the Court holds he is not.

The issue of reasonable and necessary treatment is complicated by the fact that A1 Fun Cycles did not completely comply with the law in providing Mr. Taylor's medical care. Tennessee Code Annotated 50-6-204(a)(3)(A)(i) requires an employer to provide an injured employee with a panel of three doctors from which the employee may choose a treating physician. After Mr. Taylor's initial care, A1 Fun Cycles authorized Dr. Rose to treat him without giving Mr. Taylor a panel.

Of course, A1 Fun Cycles provided a panel of spine surgeons after Dr. Rose could find nothing objective from a shoulder standpoint to explain Mr. Taylor's symptoms, and Mr. Taylor selected Dr. Burval. However, when Dr. Burval determined that Mr. Taylor required further evaluation for his sternoclavicular complaints and referred him to Dr. Evans and then Dr. Kregor, A1 Fun Cycles declined to provide a panel but instead authorized Dr. Burval's referrals.

To be clear, Tennessee Code Annotated section 50-6-204(a)(3)(ii) allowed A1 Fun Cycles to do so. However, when Dr. Evans and then Dr. Kregor declined to provide treatment, A1 Fun Cycles did not provide Mr. Taylor with a panel, nor does the evidence show that Dr. Burval referred him to Dr. Kuhn. Further, Dr. Kuhn also refused to see Mr. Taylor; therefore, he was never physically evaluated by an orthopedic trauma specialist.

However, even if Mr. Taylor established that A1 Fun Cycles failed to meet its obligations under Tennessee Code Annotated 50-6-204, this does not necessarily mean that he is entitled to another authorized doctor. *See Berdnik v. Fairfield Glade Com'ty*

until July 20, 2021.

4

*Club*, 2017 Wrk. Comp. App. Bd., LEXIS 32, at *10-11 (May 18, 2017). In *Berdnik*, the Appeals Board held that the first question that must be answered before ordering benefits is whether the evidence presented showed that the employee is likely to prove at trial that she is entitled to benefits. *Id*. at *11. Even though the employer failed to provide a panel, the only medical evidence presented at the hearing proved that the employee's condition was not causally related to employment. Thus, the Appeals Board held that the employee did not prove she was likely to prevail at trial and was not entitled to a panel of doctors. *Id*.

Although the question in this case is about reasonable and necessary care, not causation, the analysis remains the same as in *Berdnik*. It is Mr. Taylor's burden to show that he is likely to prove at trial that another authorized physician to treat his sterno-clavicular complaints is reasonable and necessary. He must do so through expert medical opinion.

The medical proof showed that Dr. Burval was satisfied that no additional treatment was reasonable or necessary, based on Drs. Evans's and Kregor's refusal to see Mr. Taylor, and Dr. Kuhn's email that, after reviewing the diagnostic film, he had nothing to offer Mr. Taylor. To counter this evidence, Mr. Taylor only offered his testimony that he continues to suffer clavicle pain and discomfort, records from his family provider documenting his complaints, and a recommendation in February from an emergency provider that he follow up with an orthopedist. The Court holds Mr. Taylor's proof is insufficient to meet his burden, and denies his request to be treated by another doctor.

In addition to medical benefits, Mr. Taylor also seeks temporary disability benefits. There are two types of temporary disability: temporary partial disability and temporary total disability. Tenn. Code Ann. § 50-6-207(1) and (2). The Court will address the applicability of each in turn.

Mr. Taylor may be entitled to temporary partial disability benefits if his temporary disability resulting from the work injury is not total. *See* Tenn. Code Ann. § 50-6-207(2). "Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Hackney v. Integrity Staffing Solutions, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29*,* at *11 (July 22, 2016). Mr. Taylor must also show the difference between what he could have earned in his partially disabled state and his average weekly wage. Tenn. Code Ann. § 50-6-207(2)(A).

Shortly after his accident, Dr. Rose and Dr. Burval placed Mr. Taylor under significant restrictions that essentially restricted him from working with his left arm. However, Mr. Ward, owner of A1 Fun Cycles, testified that he had work available for Mr. Taylor that accommodated those restrictions, and he had the discretion to stop

5

performing a particular task if it caused him too much pain. Even if he could not perform any physical tasks, Mr. Ward testified that Mr. Taylor could speak with customers and answer their questions. The Court found Mr. Ward's testimony credible on this point.

Mr. Taylor admitted that he only attempted to work twice for a few hours and did not return to work after December 8, which led to his termination on December 26. He explained that his shoulder and clavicle hurt so badly that he could not perform any task, including talking with customers. However, he presented no medical proof to support this assertion. The Court holds that his subjective perceptions alone are not enough to justify his refusal to work within his medical restrictions. Thus, the Court denies Mr. Taylor's request for temporary partial disability benefits.

The Court now turns to the issue of temporary total disability benefits. To receive these benefits, Mr. Taylor must show he is likely to prove: (1) a disability from working as the result of a work injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Stated another way, Mr. Taylor must prove he was totally incapacitated from working by his injury to receive temporary total disability benefits.

Here, the undisputed evidence is that on December 30, Dr. Burval took Mr. Taylor off work until he was evaluated by an orthopedic specialist. Mr. Taylor argued that the evaluation never happened, so he is entitled to temporary total disability benefits until July 20, when he started his business.

A1 Fun Cycles argued against temporary total disability on the grounds that Mr. Taylor was terminated for job abandonment on December 26, four days before Dr. Burval took him off work. However, the termination for cause defense only applies in situations where temporary partial disability benefits are sought and, but for the termination, the employee could have returned to work despite his restrictions. *See, e.g., Mace v. Express Servs., Inc.*, TN Wrk. Comp. App. Bd. LEXIS 49, at *8, 9 (Dec. 11, 2015). Thus, Mr. Taylor's termination is irrelevant as to the issue of temporary total disability.

Nevertheless, the Court holds that Dr. Kuhn's records review satisfied Dr. Burval's intent to keep Mr. Taylor off work until he was evaluated by a specialist. Therefore, Mr. Taylor is likely to prove entitlement to temporary total disability benefits only from December 30 until January 25, when Dr. Kuhn sent the email declining to see Mr. Taylor because his imaging was normal.

To determine the total benefit amount, the Court must first calculate Mr. Taylor's compensation rate based on the wage statement. In calculating the compensation rate, the Court did not use the week Mr. Taylor was injured. Arguably, only those weeks Mr.

6

Taylor worked after he was rehired in September should be used; however, the Court believes that the entire wage statement is a more accurate reflection of Mr. Taylor's average weekly wage. The Court determines Mr. Taylor's average weekly wage is $426.64, resulting in a compensation rate of $277.71. Based on this rate, A1 Fun Cycles shall pay $1,031.49 to Mr. Taylor in temporary total disability benefits.

Finally, the parties stated during the hearing that they did not anticipate the Tennessee Subsequent Injury Fund would retain any liability in this case. Counsel for SIF then moved for dismissal, and the parties agreed to the SIF's dismissal without prejudice. The Court holds that the SIF is dismissed without prejudice to refiling.

**IT IS, THEREFORE, ORDERED**:

1. Mr. Taylor's request for another authorized physician is denied.

2. Mr. Taylor's request for temporary partial disability benefits is denied. A1 Fun Cycles shall pay Mr. Taylor temporary total disability benefits from December 30, 2020, until January 25, 2021, at the compensation rate of $277.71 for a total of $1,031.49. Mr. Taylor's counsel is awarded 20% of this award as attorney's fees.

3. The Tennessee Subsequent Injury and Vocational Rehabilitation Fund is dismissed without prejudice from this action.

4. This case is set for a Scheduling Hearing on **Tuesday, November 9, 2021, at 9:00 a.m. Central Time.** The parties must call 615-253-0010 or 855-689-9049 toll-free to participate. Failure to appear might result in a determination of the issues without the party's participation.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer or Carrier must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for noncompliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED September 7, 2021.**

_____
ROBERT DURHAM, JUDGE
Court of Workers' Compensation Claims

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Transfer Order
5. A1 Fun Cycle's Witness and Exhibit List
6. A1 Fun Cycle's Pre-Hearing Statement
7. Mr. Taylor's Pre-Hearing Statement
8. SIF's Pre-Hearing Statement
9. Mr. Taylor's Witness and Exhibit List

Exhibits:
1. Mr. Taylor's collective exhibit of records from various providers
2. Mr. Taylor's affidavit
3. A1 Fun Cycle's collective exhibit of medical records
4. Dr. Rose's work statements
5. Wage Statement
6. A1 Fun Cycle's Interrogatory Responses
7. September 2020 Separation Notice
8. December 2020 Separation Notice

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on September 7, 2021.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Steve Karr | | | X | Steve@flexerlaw.com Cindy@flexerlaw.com |
| Tiffany Sherrill | | | X | TBSherrill@mijs.com clalmeida@mijs.com |
| Patrick Ruth | | | X | Patrick.Ruth@tn.gov |

_____
**PENNY SHRUM, COURT CLERK**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*